Robert Ahdoot (SBN 172098)
Deborah De Villa (SBN 312564)
**AHDOOT & WOLFSON, PC**
2600 West Olive Avenue, Suite 500
Burbank, CA 91505
Tel: (310) 474-9111
Fax: (310) 474-8585
*rahdoot@ahdootwolfson.com*
*ddevilla@ahdootwolfson.com*

Scott D. Owens, Esq. (*Pro Hac Vice* forthcoming)
Andree Rozados-Quaresima (SBN 342845)
**SCOTT D. OWENS, P.A.**
2750 North 29th Avenue, Suite 209A
Hollywood, Florida 33020
Telephone: (954) 589-0588

*Attorneys for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NORMA PLOCK, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br>vs.<br><br>CHEDRAUI USA, INC., a California Corporation,<br><br>Defendant. | Case No.: 25-cv-2539<br><br>**<u>CLASS ACTION</u>**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR AND ACCURATE CREDIT TRANSACTIONS ACT, 15 U.S.C. § 1681c(g)**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR AND ACCURATE CREDIT TRANSACTIONS ACT (FACTA)**

Plaintiff, Norma Plock ("Plaintiff"), on behalf of herself and other similarly situated individuals, brings this action against Defendant, Chedraui USA, Inc., d/b/a El Super ("Defendant" or "Chedraui"), and alleges:

## INTRODUCTION

1. This action arises from Defendant's violation of the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*., as amended ("FCRA"), a federal statute that requires merchants to omit or mask certain credit card and debit card information on receipts provided to consumers.

2. Despite the clear language of the statute, Defendant knowingly or ***recklessly failed to comply with FACTA by printing all sixteen (16) digits of consumers' credit and debit card account numbers on its receipts***. As a result of Defendant's unlawful conduct, Plaintiff and the proposed Class, each of whom conducted business with Defendant during the time frame relevant to this complaint, suffered a violation of their statutory rights under 15 U.S.C. § 1681c(g). Accordingly, Plaintiff and the proposed Class members are entitled to an award of statutory damages as provided by 15 U.S.C. § 1681n.

3. Defendant's egregious violation of FACTA by printing the entire sixteen-digit card account number on its receipts constitutes an invasion of Plaintiff's and the putative class members' privacy. Courts have recognized violations of a right to secrecy of personal information as a species of privacy violation. *Yahoo! Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 913 F.3d 923, 924–25 (9th Cir. 2019), *certified question answered sub nom. Yahoo Inc. v. Nat'l Union Fire Ins. Co. etc.*, 14 Cal. 5th 58, 519 P.3d 992 (2022) ("The right to privacy is generally understood to encompass both a right 'to be free from unwanted

intrusions,' known as the right to seclusion, as well as a right 'to keep personal information confidential,' known as the right to secrecy.").

4. Moreover, Defendant's breach of the expectation that it would keep the cardholder's information secret is similar to the tort of "breach of confidence." *Barclift v. Keystone Credit Servs., LLC*, 93 F.4th 136, 158 (3d Cir.), *cert. denied*, 145 S. Ct. 169 (2024) ("The Supreme Court reached the same conclusion in *TransUnion*. It specifically listed the 'disclosure of private information' as an example of a 'harm[ ] traditionally recognized as providing a basis for lawsuits in American courts.'").

5. Defendant's printing of Plaintiff's entire card account number also resembles the common law tort of intrusion upon seclusion because a reasonable person would find such a disclosure highly offensive. *See Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 491 (9th Cir. 2019) ("Intrusion upon seclusion does not depend upon any publicity given to the person whose interest is invaded or to his affairs. Rather, [i]t consists solely of an intentional interference with his interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, of a kind that would be highly offensive to a reasonable man.").

6. Defendant's FACTA violation therefore has a close relationship to a harms that have traditionally been regarded as providing a basis for a lawsuit. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 136 S. Ct. 1540, 1549 (2016), *as revised* (May 24, 2016).

**JURISDICTION AND VENUE**

7. This Court has jurisdiction under 15 U.S.C. § 1681p, and 28 U.S.C. § 1331, because the claims in this action arise from the violation of a federal statute.

8. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred here. Defendant does business in this District and its contacts here are sufficient to subject it to personal jurisdiction.

## PARTIES

9. Plaintiff, Norma Plock, is a natural person who resides in San Bernardino County, California.

10. Defendant Chedraui USA, Inc., is a Delaware corporation with its principal place of business at 600 Citadel Drive Commerce, CA 90040, and whose registered agent for service of process is CT Corporation System, 330 N. Brand Blvd., Suite 700, Glendale CA 91203.

11. Defendant is a Los Angeles-based leading grocery and convenience store retailer with 383 stores across California, Arizona, Nevada, New Mexico and Texas, operating under the branded names of El Super, Fiesta Mart, and Smart & Final.

## FACTUAL ALLEGATIONS

### A. Background of FACTA

12. Identity theft is a serious issue affecting both consumers and businesses. In 2024, the FTC logged more than 1.1 million identity theft reports, and received roughly 2.6 million cases of related fraud, with total losses of more than $12.7 billion.[1]

13. Upon signing FACTA into law, President George W. Bush remarked that "[s]lips of paper that most people throw away should not hold the key to their savings and financial secrets." 39 Weekly Comp. Pres. Doc. 1746, 1757 (Dec. 4, 2003). President Bush added that the government, through FACTA, was "act[ing] to protect individual privacy." *Id.*

14. Years later the FTC explained "[c]redit card numbers on sales receipts are a 'golden ticket' for fraudsters and identity thieves."

---

[1] Ben Luthi, *U.S. Fraud and Identity Theft Losses Topped $12.7 Billion in 2024*, (May 30, 2025) www.experian.com/blogs/ask-experian/identity-theft-statistics/#:~:text=Quick%20Answer,Key%20findings%20include

15. FACTA was specifically designed to thwart identity thieves' ability to gain sensitive information regarding a consumer's credit or debit card account from a receipt provided to the consumer during a point-of-sale transaction, which, through any number of ways, can fall into the hands of someone other than the consumer.

16. Codified at 15 U.S.C. § 1681c(g), this provision states the following:

> "Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." U.S.C. § 1681c(g)(1) (the "Receipt Provision").

17. After enactment, FACTA provided three (3) years in which to comply with its requirements, mandating full compliance with its provisions no later than December 4, 2006.

18. FACTA was widely publicized among retailers and the payment card industry. For example, on March 6, 2003, in response to earlier state legislation enacting similar requirements, then-CEO of Visa USA, Carl Pascarella, explained;

> "Today, I am proud to announce an additional measure to combat identity theft and protect consumers. Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts. The card's expiration date will be eliminated from receipts altogether.... The first phase of this new policy goes into effect July 1, 2003, for all new terminals . . . ."

19. Within 24 hours, MasterCard and American Express announced they were imposing similar requirements.

20. Card issuing organizations proceeded to require compliance with FACTA by contract, in advance of FACTA's mandatory compliance date. For example, the publication, "Rules for Visa Merchants," which is distributed to and

binding upon all merchants that accept Visa cards, expressly requires that "Visa requires that all new electronic POS terminals provide account number truncation on transaction receipts. This means that only the last four digits of an account number should be printed on the customer's copy of the receipt."[2]

21. Because a handful of large retailers did not comply with their contractual obligations to the card companies and FACTA's straightforward requirements, Congress passed The Credit and Debit Card Receipt Clarification Act of 2007, to make a temporary change to the definition of willful noncompliance *only* with respect to violations involving the printing of card expiration dates on receipts.

*22.* Importantly, the Clarification Act did not amend FACTA to allow disclosure of card expiration dates. Instead, it simply provided amnesty for certain past violators up to June 3, 2008. *Moreover, the amendment did not affect FACTA's prohibition against disclosing more than the last five digits of the card number on the receipt.*

23. In the interim, card processing companies continued to alert their merchant clients, including Defendant, of FACTA's requirements. According to a Visa Best Practice Alert in 2010:

> Some countries already have laws mandating PAN truncation and the suppression of expiration dates on cardholder receipts. For example, the United States Fair and Accurate Credit Transactions Act (FACTA) of 2006 prohibits merchants from printing more than the last five digits of the PAN or the card expiration date on any cardholder receipt. (Please visit http://www.ftc.gov/os/statutes/fcrajump.shtm for more information on the FACTA.) To reinforce its commitment to protecting consumers, merchants,

---

[2] *Rules for Visa Merchants*, VISA, www.cs.miami.edu/home/burt/learning/Csc598.073/notes/rules_for_visa_merchants.pdf (Last Visited: September 25, 2025).

> and the overall payment system, Visa is pursuing a global security objective that will enable merchants to eliminate the storage of full PAN and expiration date information from their payment systems when not needed for specific business reasons. To ensure consistency in PAN truncation methods, Visa has developed a list of best practices to be used until any new global rules go into effect.

*Visa Best Practices for Primary Account Number Storage and Truncation.* [3]

24. Likewise, American Express advised:

> Pursuant to Applicable Law, truncate the Card Number and do not print the Card's Expiration Date on the copies of Charge Records delivered to Card Members. Truncated Card Number digits must be masked with replacement characters such as “x,” “*,” or “#,” and not blank spaces or numbers.

*American Express Merchant Operating Guide (October 2017) at §4.6*[4].

25. Similarly, MasterCard required:

> A Transaction receipt generated by an electronic POI Terminal, whether attended or unattended, must not include the Card expiration date. In addition, a Transaction receipt generated for a Cardholder by an electronic POI Terminal, whether attended or unattended, must reflect only the last four digits of the primary account number (PAN). All preceding digits of the PAN must be replaced with fill characters, such as “X,” “*,” or “#,” that are

---

[3] *Visa Best Practices for Primary Account Number Storage and Truncation*, VISA, https://bd.visa.com/content/dam/VCOM/global/support-legal/documents/bulletin-pan-truncation-best-practices.pdf (Last Visited: September 25, 2025).

[4] *American Express Marchant Operating Guide*, AMERICAN EXPRESS, (Oct., 2017) https://cdn2.hubspot.net/hubfs/5419069/FastTransact_February2019/PDF/AMEX-MerchantPolicyOptBlue-10.2017.pdf.

neither blank spaces nor numeric characters. *Transaction Processing Rules* (20 December 2022) at Rule 3.13.3.[5]

26. In sum, FACTA expressly prohibits disclosing more than the last five digits of credit and debit card account numbers, principally to help protect persons from identity theft.

27. The risk of identity theft caused by disclosing the entire PAN[6] number on customers' transaction receipts is substantial, as it enables a thief who finds the receipt to easily commit fraud.

28. Once fraudsters have the full card account number, they use random-number generators and algorithms to fill in the expiration date and verification code, generating hundreds or thousands of fake accounts.[7]

29. These kinds of attacks have increased. Visa recently reported "enumeration attacks" which, like the distributed-guessing attack above, involve fraudsters using automated computer programs to systematically submit multiple variations of card data (including the card number, expiration date, and security or CVV code) to try to correctly guess a working set of numbers, are on the rise. (Visa

---

[5] *Transaction Processing Rules*, MASTERCARD, (June 10, 2025) https://www.mastercard.us/content/dam/public/mastercardcom/na/global-site/documents/transaction-processing-rules.pdf.

[6] "A Primary Account Number (PAN), also known as a payment card number, is the series of numbers embossed or printed on the front of a credit, debit, or prepaid card. This number is assigned by a financial institution and identifies the issuer and the specific account. This number ensures that the card is properly linked to the correct account when you send money to a bank account." *Frequently Asked Questions*, WESTERN UNION, https://www.westernunion.com/blog/en/gb/what-is-a-pan-card-number/#:~:text=A%20Primary%20Account%20Number%20(PAN)%2C%20also%20known%20as%20a,issuer%20and%20the%20specific%20account (Last Visited: September 25, 2025).

[7] *Fixing the Gap: The Secret to Fighting BIN Attacks*, MASTERCARD, https://b2b.mastercard.com/9220 (Last Visited: September 24, 2025).

Business News, Best Practices, Sept. 13, 2021) Visa continues to report that "[a]gain, as in years past, enumeration (i.e., the programmatic, automated testing of common payment data elements via eCommerce transactions to effectively guess the full payment account number, CVV2, and/or expiration date) remains among the top threats to the payment ecosystem." (Visa Biannual Threats Report at p. 7, December 2022).[8] This is further confirmed by the PCI Security Standards Council and National Cyber-Forensics and Training Alliance October 21, 2020 bulletin, which expressly describes these enumeration attacks as "an ongoing threat that requires urgent attention."

30. A BIN attack starts with one good card: the attacker usually starts with a known valid card number. Using the known card's BIN, the fraudster creates new card numbers by altering the remaining digits — often with the help of automated tools or macros. The attacker also attempts to guess the 3-digit security code on the back of the card (also known as the CVV2). They run transactions using various combinations, typically on merchant websites with minimal fraud prevention controls. If a transaction is approved, the fraudster knows they have hit a valid combination, and that card is now a target for future fraud. If it's declined, the card is discarded, and they move on.[9]

31. Defendant's practice of printing the entire sixteen (16) digit account number of credit and debit cards on its receipts enhances a thief's ability to conduct these attacks because it arms the identity thief with information he would not otherwise be privy to.

---

[8] *Biannual Threats Report*, VISA, (Dec. 2022), https://usa.visa.com/content/dam/VCOM/global/support-legal/documents/pfd-biannual-threats-report_december-2022.pdf.

[9] *Understanding BIN Attacks and How to Stay Safe*, SACO & BIDDEFORD SAVINGS, (Sept. 15, 2025) www.sbsavings.bank/blog-articles/understanding-bin-attacks-and-how-to-stay-safe/.

32. A thief can deduce missing account information needed to commit fraud via "phishing" inquiries, *i.e.*, using the account number digits and information about the cardholder's account learned from the receipt by contacting the consumer posing as the store or bank and convince the consumer the call is legitimate, thereby extracting more data. *See, e.g.*, *Redman v. RadioShack Corp*., 768 F.3d 622, 626 (7th Cir. 2014) (data FACTA prohibits merchants from printing on the receipt can "bolster the credibility of a criminal" in "phishing scams").

33. Disclosing FACTA-prohibited information on the receipt also gives thieves multiple ways to access it. In addition to finding the receipt if discarded or lost, expert testimony to Congress established printing the information where it can be seen risks its capture by "unscrupulous employees" or "shoulder-surfers" (persons standing nearby) who see the receipt.[10]

34. Debit and credit card numbers are valuable information that is routinely sold to criminals. *See* https://www.cbsnews.com/newyork/news/credit-card-information-stolen-12-websites-manhattan-da-alvin-bragg/ (card information sold on 12 websites). Defendant's mishandling of Plaintiff and the class memebrs'

[10] "The epidemic of identity theft is growing because sensitive, personal information is acquired very easily, and the issuers of credit are often less than careful in verifying and authenticating the true identity of the applicant. There are many ways that fraudsters obtain data about us--it may be appropriated by, stolen mail, dumpster-diving, lost or stolen wallets, shoulder surfing, burglary, friends, relatives (only about 9 percent), ***unscrupulous employees***, phone fraud, Internet fraud (phishing and pharming), spyware, hackers, unprotected wireless networks, unethical use of public documents that contain personal information, needless display of the Social Security numbers on government documents (such as; military and Medicare identification cards); the transfer sale and sharing of Social Security numbers and other data among financial institutions, credit reporting agencies and data brokers." Identity Theft and Data Broker Services: S. Hrg. 109-1087 Before the Committee on Commerce, Science, and Transportation, 109th Cong. Sess. 1 (May 10, 2005) (emphasis added).

card account numbers , thus, constitute an economic injury with a monetary value equivalent to the price at which fraudsters buy and sell this information.

**B. Defendant's Prior Knowledge of FACTA**

35. As further detailed herein, Defendant had actual knowledge of FACTA's truncation requirement before it began failing to comply with FACTA.

36. Chedraui is the fourth largest grocery retailer in California with sales of $8 billion annually. It operates more than 380 stores across five states in the western U.S. under three store banners: El Super, Fiesta Mart and Smart & Final.[11]

37. Most of Defendant's business peers and competitors currently and diligently ensure their credit card and debit card receipt printing process remains in compliance with FACTA by consistently verifying their card machines and devices comply with the Receipt Provision. Defendant could very easily have done the same.

38. Upon information and belief, it would have taken Defendant a mere 30 seconds or less to run a test receipt in order to determine whether its point-of-sale system was violating FACTA before placing the system into use.

39. Upon information and belief, a receipt is required in order to process a return or refund at one of the Defendant's stores[12]; in such instances, an employee of Defendant would see a full account number. Upon information and belief, returns where customers must show their receipt to the store's employees are routinely processed at Defendant's locations.[13]

---

[11] https://www.linkedin.com/company/chedraui-usa/about/ (Last Visited: September 25, 2025).

[12] *Store Policies – Frequently Asked Questions*, SMART & FINAL, https://www.smartandfinal.com/sm/pickup/rsid/522/policy-faqs <Last Visited: September 25, 2025>.

[13] *Id.*

40. A receipt showing sixteen (16) digits of a card account number would appear unusual even to an employee not specifically trained on FACTA—because it unlawfully discloses the full account number, rather than a truncated version as required under FACTA.

41. Numerous state statutes also require Defendant to protect customer financial information when operating retail locations, such as the California Song-Beverly Credit Card Act, Cal. Civ. Code § 1747.09, which, like FACTA, prohibits businesses from printing transaction receipts that disclose the expiration dates or account numbers of credit and debit cards.

42. Moreover, unlike the U.S. Constitution, the California Constitution expressly guarantees privacy. Article I, Section 1. ("All people are by nature free and independent and have inalienable rights. Among these are … pursuing and obtaining safety, happiness, and privacy.")

43. This explicit right to privacy was added by constitutional amendment in 1972 and has been interpreted broadly. The California Supreme Court has recognized that it protects individuals from both governmental intrusions and certain private-sector practices. Financial privacy has specifically been recognized within this scope. *See Valley Bank of Nevada v. Superior Court*, 15 Cal.3d 652 (1975) (holding that bank customers have a constitutionally protected privacy interest in their financial records).

44. Defendant was not only clearly informed not to print more than the last five digits of credit or debit cards but was contractually prohibited from doing so. Defendant accepts credit and debit cards from all major issuers, such as Visa, MasterCard, American Express and Discover Card. Each of these companies sets forth requirements that merchants such as (and including) Defendant must follow, including FACTA's redaction and truncation requirements found in the Receipt Provision. *See, e.g.*, *Merit Music Service, Inc. v. Sonneborn*, 225 A.2d 470, 474

(1967) ("[T]he law presumes that a person knows the contents of a document that he executes and understands at least the literal meaning of its terms.").

45. Given the size and years of experience of Defendant's business, and the various state and federal regulations governing its business, at minimum Defendant was acting with reckless disregard of the FACTA requirements and purpose when it printed credit and debit card transaction receipts that disclosed more than the last five digits of the credit or debit card account number. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007) (hold that a defendant is liable for willfully violating Fair Credit Reporting Act where a violation is committed with "reckless disregard" for the law).

46. Furthermore, Plaintiff is informed and believes, and thereupon alleges, that Defendant's officers have knowledge of FACTA's truncation requirement.

47. Plaintiff is informed and believes, and thereupon alleges, that Defendant knew about the requirement that they truncate card account numbers on transaction receipts. This is evidenced by the fact that on and off, during the years prior to the illegal conduct alleged herein, Defendant was known to have truncated credit and debit card numbers in compliance with FACTA.

**C. Plaintiff's Factual Allegations**

48. On or about January 29, 2024, Plaintiff used her personal debit card to purchase goods at El Super located at 263 E 9th St, San Bernardino, CA 92410.

49. After making her purchase, Plaintiff was presented with an electronically printed receipt showing ***all sixteen (16) digits*** of her debit card account number.

50. The disclosure of Plaintiff's *entire* card account number on the receipt compromised the privacy of Plaintiff's sensitive and private financial information. *Jeffries v. Volume Servs. Am., Inc.*, 928 F.3d 1059, 1066 (D.C. Cir. 2019) (noting that although not every FACTA violation creates a concrete injury in fact, a violation where the entire card account number is printed on the receipt does so);

*Kamal v. J. Crew Grp., Inc*., 918 F.3d 102, 116 (3d Cir. 2019) ("Our analysis would be different if, for example, Kamal had alleged that the receipt included all sixteen digits of his credit card number"); *Barrientos v. Williams-Sonoma, Inc*., No. 21-CV-05160, 2023 WL 5720855, at *8 (N.D. Ill. Sept. 1, 2023) ("This kind of violation is the most extreme and egregious violation of FACTA" in reference to printing the full card account number).

51. Defendant's receipt showing Plaintiff's full debit card account number provides sufficient information to defraud Plaintiff, and it is a nightmare scenario in which Plaintiff cannot use her card at Defendant's store without being exposed to this risk of fraud.

52. Defendant's El Super supermarket is where Plaintiff does all of her weekly grocery shopping.

53. Plaintiff believes and alleges that she has discarded and possible left behind at the store numerous receipts showing her entire card account number before realizing Defendant was priting receipt in violation of FACTA.

54. In fact, Plaintiff believes her card has been subject to fraud, and the fraudster may be someone who retrieved one of Defendant's receipts Plaintiff—unaware of the violation—discarded.

55. As a result of Defendant's reckless disregard of the law, Plaintiff has since been burdened with the additional task of safeguarding her receipts for any purchases subsequently made from Defendant's stores.

56. The printing of sixteen (16) digits of Plaintiff's card account number was also a breach of confidence in the safe handling of Plaintiff's sensitive financial information, as well as a breach of an implied bailment, and necessitated Plaintiff's keeping and safeguarding the receipts.

57. The printing of Plaintiff's full card account number exposed her to the risks of the following types of fraud, including but not limited to the following: (1) Card-Not-Present (CNP) fraud; (2) Phishing & social-engineering attacks; (3)

Account takeover / identity fraud; (4) Card cloning / card-present fraud; (5) Resale of data on dark markets; and (6) Fraudulent "merchant" chargebacks / disputes.

58. Unlike other types of FACTA violations that were deemed insufficient to establish a concrete injury sufficient for Article III standing, here Plaintiff suffered an invasion of her privacy that exposed to her a concrete, material, imminent risk of fraud.

59. Plaintiff's full card account number may have been retrieved by fraudsters when she discarded her receipts before realizing that Defendant was disclosing her entire PAN on its printed receipts.

60. Defendant's practice of printing of Plaintiff's entire PAN is one that federal courts have construed as "involv[ing] the sort of revelation of information that Congress determined could lead to identity theft." *See Noble v. Nevada Checker Cab Corp*., 726 F. App'x 582, 584 (9th Cir. 2018).

**D. Defendant's Specific Violative Acts and Omissions**

61. Plaintiff is informed and believes, and thereupon alleges, that Defendant implements, oversees, and maintains control over the same uniform debit and credit card payment processing systems, policies, practices, and procedures at all its stores – including, without limitation, negotiating, entering into, and acting pursuant to various contracts and agreements with the electronic payment processing company whose technology Defendant used to process the transactions at issue here.

62. The point-of-sale system used by Defendant stores records all payment transactions and has the ability to print duplicate copies of all payment receipts provided to customers.

63. Notwithstanding its knowledge of the requirements of FACTA, Defendant, during the time frame relevant to this action, has issued thousands of point-of-sale receipts disclosing more than the last five digits of their customers' debit or credit card account numbers.

64. By ignoring the requirements of this important federal statute, in an environment already ripe for identity theft and other evils, Defendant breached Plaintiff's and the proposed Class members' privacy. Defendant's conduct alleged herein resulted in the potential disclosure of Plaintiff's and the proposed Class members' private financial information to the world, including, but not limited to, persons who might find the receipts in the trash or elsewhere, dedicated identity thieves who thrive in environments such as Defendant's various locations, or any of Defendant's several agents or employees who handled the receipts.

65. Simply put, by printing numerous transaction receipts in violation of a well-known federal statute, Defendant has caused – to paraphrase the words of the Honorable Judge Posner (Ret.) – "an unjustifiably high risk of harm that [wa]s either known or so obvious that it should [have been] known" to Defendant. *Redman*, 768 F.3d at 627 (quoting *Farmer v. Brennan*, 511 U.S. 825, 836, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).

## CLASS ACTION ALLEGATIONS

66. Plaintiff brings this action on behalf of herself and the following Class pursuant to Federal Rule of Civil Procedure 23(a) and (b):

> **Nationwide Class**
> All persons in the United States who engaged in one or more transactions using a credit or debit card at any of Defendant's stores in the United States at a time when the point-of-sale systems utilized by Defendant to process customer transactions were programmed to print on the customer's transaction receipt more than the last five (5) digits of the credit or debit card number used in the transaction, within the two (2) years prior to the filing of the Plaintiff's Complaint.

67. Excluded from the Class are: (1) any Judge presiding over this action, members of their immediate families, and Court Staff; and (2) Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which

Defendant, or its parents, have a controlling interest, and its current or former officers and directors.

68. Based on Defendant's voluminous sales figures, members of the proposed Class are undoubtedly so numerous that joinder of all members would be impracticable.

69. There are questions of law and fact common to all the members of the proposed Class that predominate over any questions affecting only individual members. They include:

a) Whether Defendant and/or its agents generated customer transaction receipts displaying more than the last five digits of customer debit or credit card numbers, violating FACTA;

b) Whether Defendant's conduct was knowing or reckless;

c) Whether Defendant is liable for statutory damages, and the amount.

70. Plaintiff is committed to fairly and adequately protecting the interests of the proposed Class. She has no interests antagonistic to those of the proposed Class and has retained attorneys experienced in class and complex litigation.

71. A class action is an appropriate method to resolve this controversy because: (i) a class action promotes efficiency by resolving the class members' common claims in one action, eliminating the need for the courts to resolve the same factual and legal issues over and over, thus reducing the burden on the courts; (ii) a class action promotes fairness and justice, as it enables class members who do not know they have a claim, or who cannot find counsel or lack the ability to prosecute their claim on their own, to vindicate their rights and get relief; and (iii) a class action is necessary to effectuate FACTA's deterrent goals.

72. Plaintiff does not anticipate any difficulty in the management of this litigation.

**COUNT I – VIOLATIONS OF 15 U.S.C. § 1681(c)(g)**

73. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

74. 15 U.S.C. §1681c(g)(1) states as follows:

> "Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction."

75. This section applies to any "device that electronically prints receipts" (hereafter "Devices") at point of sale or transaction. 15 U.S.C. §1681c(g)(3).

76. As described, *supra*, Defendant employs said Devices for point-of-sale transactions at its stores in the United States.

77. On or before the date on which this complaint was filed, Defendant provided Plaintiff and members of the proposed class with receipts that violated the Receipt Provision.

78. At all times relevant to this action, Defendant was aware of both the Receipt Provision as well as the requirement to comply with said provision.

79. Notwithstanding FACTA being on the books for twenty years, the three-year period to comply with FACTA when it was enacted, and having knowledge of the Receipt Provision, Defendants knowingly or recklessly violated the Receipt Provision.

80. By printing all sixteen (16) digits of Plaintiff's card account number on her receipt, Defendant caused Plaintiff to suffer a heightened risk of identity theft, compromised the privacy of Plaintiff's personal and private financial information, exposed Plaintiff's private information to those of Defendant's employees who handled the receipts, and forced Plaintiff to take action to prevent further disclosure of the private information displayed on the receipts.

81. As a result of Defendant's willful violations of the FCRA, specifically FACTA, Defendant is liable to Plaintiff and the class members pursuant to 15 U.S.C. § 1681n, for statutory damages, punitive damages, attorney's fees and costs.

* * *

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and in favor of the proposed Class, and against Defendant, as follows:

a) Granting certification of the Class;

b) Awarding statutory damages;

c) Awarding punitive damages;

d) Awarding attorneys' fees, litigation expenses and costs of suit; and

e) Awarding such other and further relief as the Court deems proper under the circumstances.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury on all issues so triable.

DATE: September 25, 2025

Respectfully submitted,

*/s/ Robert Ahdoot*
Robert Ahdoot (SBN 172098)
Deborah De Villa (SBN 312564)
**AHDOOT & WOLFSON, PC**
2600 West Olive Avenue, Suite 500
Burbank, CA 91505
Tel: (310) 474-9111
Fax: (310) 474-8585
*rahdoot@ahdootwolfson.com*
*ddevilla@ahdootwolfson.com*

Scott D. Owens, Esq.*
Andree Rozados-Quaresima (SBN 342845)
**SCOTT D. OWENS, P.A.**
2750 North 29th Avenue, Suite 209A
Hollywood, Florida 33020
Telephone: (954) 589-0588

*Attorneys for the Plaintiff and the Proposed Class*